SAMIA DILLARD and TYREK STEPHENS, )
as Co-Personal Representatives of the Estate of )
STEPHANIE PERKINS, )
)
Plaintiffs, )
)
v. ) **COMPLAINT**
) *JURY TRIAL REQUESTED*
LINCARE INC., LINCARE )
HOLDINGS, INC., INVACARE )
CONTINUING CARE, INC., )
INVACARE CORPORATION, and )
JOHN DOES 1-3. )
Defendant. )

## COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL

COME NOW, Plaintiffs, SAMIA DILLARD and TYREK STEPHENS, as Co-Personal Representatives of the Estate of Stephanie Perkins, by and through their undersigned counsel, and hereby file this cause of action on behalf of the Estate of Stephanie Perkins and the surviving family members against LINCARE INC., LINCARE HOLDINGS, INC., INVACARE CONTINUING CARE, INC., and INVACARE CORPORATION, and does hereby allege and say the following:

### JURISDICTION, VENUE, AND PARTIES

1. This is a claim for damages sought by the Plaintiffs in excess of Twenty-Five Thousand Dollars ($25,000.00 USD).

2. This action is proper in Rockingham County, pursuant to N.C. Gen. Stat. §§ 1-79 and 1-80, because the cause of action arose in this county, at all times material hereto, the Plaintiffs, survivors, and Decedent resided in Rockingham County.

**EXHIBIT A**

3. Plaintiffs, SAMIA DILLARD and TYREK STEPHENS, the daughter and son (respectively) of Stephanie Perkins (hereinafter "Decedent"), are Co-Personal Representatives of the Estate of Stephanie Perkins. At all times relevant to this incident, Plaintiffs were and remain residents of the State of North Carolina, Rockingham County. Plaintiffs, on behalf of the Estate of Stephanie Perkins and the surviving family members, are "claimants" as that term is defined in NCGS 99B-1. Plaintiffs, on behalf of the Estate of Stephanie Perkins and the surviving family members, seek to recover all damages allowable under law for the wrongful death of Decedent, STEPHANIE PERKINS.

4. Decedent, STEPHANIE PERKINS (hereinafter "Decedent"), died on January 20, 2015. At the time of her death, she resided at 290 Benson Road, Rockingham County, Eden, North Carolina 27288 with her three children, SAMIA DILLARD, TYREK STEPHENS, and COREY DILLARD.

5. Decedent was survived by her three children, SAMIA DILLARD, TYREK STEPHENS, and COREY DILLARD. They are entitled to assert surviving family member claims for the wrongful death of Decedent, pursuant to N.C. Gen. Stat. § 28A-18-2.

6. Defendant, LINCARE, INC is a foreign corporation, authorized to operate in the State of North Carolina, which transacted business and sold and/or leased its products within the State of North Carolina and committed tortuous acts within the State of North Carolina causing damage to persons within the State of North Carolina. Defendant, LINCARE, INC is in the business of delivering, selling, and/or leasing various products to consumers for use in the home health industry, including oxygen regulators, oxygen concentrators, conserving regulators, and oxygen tanks. Defendant LINCARE, INC. is a "seller" as that term is defined in NCGS 99B-1. Defendant

Page 2 of 16

Case 1:17-cv-00356-CCE-JEP   Document 10   Filed 04/18/17   Page 2 of 16

LINCARE, INC. may receive service of process through its registered agent CT Corporation Systems located at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615-6417.

7. Defendant, INVACARE CONTINUING CARE, INC is a foreign corporation, authorized to operate in the State of North Carolina, which transacted business and sold its products within the State of North Carolina and committed tortuous acts within the State of North Carolina causing damage to persons within the State of North Carolina. Defendant, INVACARE CONTINUING CARE, INC is in the business of selling various products for use in the home health industry, including devices commonly referred to as oxygen concentrators. Defendant INVACARE CONTINUING CARE, INC is a "manufacturer" as that term is defined in NCGS 99B-1. Defendant, INVACARE CONTINUING CARE, INC may receive service of process through its registered agent CT Corporation located at 160 Mine Lake Court, Suite 200, Raleigh, North Carolina 27615-6417.

8. Defendant LINCARE HOLDINGS, INC is a foreign corporation, with a principle office believed to be located at 19387 US 19N, Clearwater, FL 33764-3102, which transacted business and sold and/or leased its products within the State of North Carolina and committed tortuous acts within the State of North Carolina causing damage to persons within the State of North Carolina. Defendant LINCARE HOLDINGS, INC, is a provider of oxygen and respiratory therapy services and is in the business of delivering, selling, and/or leasing various products to consumers for use in the home health industry, including oxygen regulators, oxygen concentrators, conserving regulators, and oxygen tanks. Defendant LINCARE HOLDINGS, INC is a "seller" as that term is defined in NCGS 99B-1. Defendant LINCARE HOLDINGS, INC is subject to the jurisdiction of the courts of the State of North Carolina by virtue of the provisions of NCGS 1-75.4. Defendant LINCARE HOLDINGS, INC may receive service of process through its registered agent CT Corporation Systems located at 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

9. Defendant, INVACARE CORPORATION, is a foreign corporation, with a principle office believed to be located at One Invacare Way, Elyria, OH 44032, which transacted business and sold its products within the State of North Carolina and committed tortuous acts within the State of North Carolina causing damages to persons within the State of North Carolina. Defendant INVACARE CORPORATION is in the business of selling various products for use in the home health industry, including devices commonly referred to as oxygen concentrators. Defendant, INVACARE CORPORATION is a "manufacturer" as that term is defined in NCGS 99B-1. Defendant, INVACARE CORPORATION is subject to the jurisdiction of the courts of the State of North Carolina by virtue of the provisions of NCGS 1-75.4. Defendant, INVACARE CORPORATION may receive service of process through its registered agent CT Corporation Systems located at 1300 East 9th Street, Cleveland, Ohio 44114.

10. Defendants JOHN DOES 1-3 are unknown persons or entities, with unknown principal offices, that transacted business and sold its products within the State of North Carolina and committed tortuous acts within the State of North Carolina causing damage to persons within the State of North Carolina. Defendants JOHN DOES 1-3 are in the business of supplying, leasing, selling, delivering and/or manufacturing oxygen related health supplies, including oxygen regulators, oxygen concentrators, conserving regulators, and oxygen tanks. Defendant, JOHN DOES 1-3 are "manufacturer" and/or "sellers" as that term is defined in NCGS 99B-1.

## FACTS

11. Decedent, age 47 at the time of her death, was required to use oxygen for health reasons.

12. Decedent's oxygen was supplied to her via several devices. These devices included various oxygen tanks, regulators, conserving regulators, and an oxygen concentrator.

13. These devices were used to deliver to Decedent the oxygen she needed to survive.

14. This use was the activity for which these devices were manufactured, designed, and advertised.

15. Based upon information and belief, Defendant INVACARE CONTINUING CARE, INC. and/or INVACARE CORPORATION manufactured and/or sold the Invacare Platinum 10 oxygen concentrator (SN14CF002883) which Decedent was using at the time of her death.

16. Based upon information and belief, Defendants John Doe 1-3, manufactured, sold, and/or delivered the oxygen tank, oxygen regulator, and/or conserving regulator which Decedent was using at the time of her death.

17. Based upon information and belief, Defendants, LINCARE, INC and/or LINCARE HOLDINGS, INC, provided these devices, including the Invacare Platinum 10 oxygen concentrator (SN14CF002883), to Decedent for use to deliver her life-saving oxygen.

18. Based upon information and belief, Defendants, LINCARE, INC and/or LINCARE HOLDINGS, INC represent in its promotional statements and advertisements its fast response time and its commitment to providing dependable goods and services. Defendants including statements like "the very best quality home respiratory services" and "24-hour, seven-day-a-week responsiveness" in its promotional and advertisements.

19. Based upon information and belief, these devices, including the Invacare Platinum 10 oxygen concentrator (SN14CF002883), which were intended to safely deliver life-saving oxygen to the Decedent, were defective and caused Decedent to be deprived of oxygen and die.

20. At all times herein relevant, Decedent was using the above-referenced devices, including the Invacare Platinum 10 oxygen concentrator (SN14CF002883), (hereinafter collectively "Oxygen Unit") in a proper and responsible manner.

21. On January 19, 2015, Decedent was inside her home when she experienced a malfunction with her Oxygen Unit, including the Invacare Platinum 10 oxygen concentrator (SN14CF002883).

22. On January 19, 2015, at or around 7:30 p.m., Decedent contacted agents for LINCARE, INC and/or LINCARE HOLDINGS, INC and reported the malfunction to them and requested immediate delivery of a properly functioning Oxygen Unit.

23. During that call on January 19, 2015, at or around 7:30 p.m., LINCARE, INC's and/or LINCARE HOLDINGS, INC's agent/representative promised that an agent/representative was "on the way" to Decedent's house to replace the malfunctioning Oxygen Unit.

24. On the morning of January 20, 2015, at or around 7a.m., after waiting in vain for LINCARE, INC's and/or LINCARE HOLDINGS, INC's agent/representative to deliver a functioning Oxygen Unit and being otherwise unable to breathe without oxygen, Decedent was found dead on the floor of her bedroom.

25. On the afternoon of January 20, 2015, after Decedent's death, at or around 4:15 p.m., a LINCARE, INC's and/or LINCARE HOLDINGS, INC's agent/representative finally arrived at Decedent's home with an alleged functioning Oxygen Unit, including an alleged functioning oxygen concentrator.

## COUNT ONE
## NEGLIGENCE
### (Against Defendants LINCARE, INC., and LINCARE HOLDINGS, INC.)

26. Plaintiffs hereby incorporate all allegations of paragraphs 1 through 25 as if fully set forth herein.

27. The injuries suffered by the Decedent were due, caused, and occasioned as a direct and proximate result of the negligence of the Defendants, by the Defendants and/or the Defendants'

agents/representatives, in that said Defendants:

   a. Negligently advertised, marketed, sold, distributed, and/or otherwise introduced into the stream of commerce an Oxygen Unit which was unsuitable for the ordinary uses for which it was intended;

   b. Negligently advertised, marketed, sold, distributed, and/or otherwise introduced into the stream of commerce an Oxygen Unit which by its defective and negligent construction was unreasonably dangerous under ordinary use;

   c. Negligently inspected the Oxygen Unit so that the said Defendants permitted to be introduced into the stream of commerce an Oxygen Unit which was unreasonably dangerous under ordinary use.

   d. Failed to exercise due care in the supply of the Oxygen Unit in that it was reasonably foreseeable that the Oxygen Unit would create a risk to human life.

   e. Negligently advertised Decedent's Oxygen Unit as being safe under ordinary use;

   f. Failure to timely deliver to Decedent a properly functioning replacement oxygen concentrator;

   g. Failure to timely deliver to Decedent a properly functioning replacement oxygen tanks, regulators, and/or conserving regulators; and

   h. Failed to timely deliver a functioning replacement Oxygen Unit, including a properly functioning replacement oxygen concentrator, pursuant to its advertised promise to Decedent "to deliver 24-hours a day, 7 days per week".

28. As a direct and proximate result of the negligence of the Defendants, by the Defendants and/or the Defendants' agents/representatives, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have

suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## COUNT TWO
## NEGLIGENCE
### (Against Defendants INVACARE CONTINUING CARE, INC, and INVACARE CORPORATION)

29. The allegations set forth in paragraph 1-28 are re-alleged and incorporated herein by reference.

30. The injuries suffered by the Decedent were due, caused, and occasioned as a direct and proximate result of the negligence of the Defendants' in that said Defendants:

   a. Negligently produced, designed, manufactured, advertised, distributed, sold and/or otherwise introduced into the stream of commerce the Invacare Platinum 10 oxygen concentrator (SN14CF002883) which was unsuitable for the ordinary uses for which it was intended;

   b. Negligently produced, designed, manufactured, advertised, distributed, sold and/or otherwise introduced into the stream of commerce the Invacare Platinum 10 oxygen concentrator (SN14CF002883) which by its defective and negligent construction was unreasonably dangerous under ordinary use;

   c. Negligently designed the Invacare Platinum 10 oxygen concentrator (SN14CF002883) in that the Defendants failed to adopt a safe, practical, feasible, or otherwise reasonable alternative design which could then have been reasonably adopted and which would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the portable oxygen unit;

d. Negligently designed the Invacare Platinum 10 oxygen concentrator (SN14CF002883) in that at the time the Invacare Platinum 10 oxygen concentrator (SN14CF002883) left the control of the Defendants the design of the Invacare Platinum 10 oxygen concentrator (SN14CF002883) was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of such design;

e. Negligently inspected the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) so that there was permitted to be introduced into the stream of commerce an oxygen concentrator which was unreasonably dangerous under ordinary use;

f. Failed to exercise due care in the manufacturing, design, and supply of the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) in that it was reasonably foreseeable that the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) would create a risk to human life;

g. Negligently advertised Invacare Platinum 10 oxygen concentrators the same or similar to the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) which is the subject of this lawsuit as being safe under ordinary use and care; and

h. Failed to recall Invacare Platinum 10 oxygen concentrators the same or similar to the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) which is the subject of this lawsuit when due care and concern for human life imposed a duty to recall such portable oxygen units.

31. As a direct and proximate result of the negligence of the Defendants, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which

the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## COUNT THREE
## NEGLIGENCE
## (Against Defendants JOHN DOES 1-3)

32. The allegations set forth in paragraph 1-31 are re-alleged and incorporated herein by reference.

33. The injuries suffered by the Decedent were due, caused, and occasioned as a direct and proximate result of the negligence of the Defendants' in that said Defendants:

34. Negligently produced, designed, manufactured, advertised, distributed, sold and/or otherwise introduced into the stream of commerce the oxygen tank, the regulator, and/or the conserving regulator used by Decedent at the time of her death.

   a. which was unsuitable for the ordinary uses for which it was intended;

   b. Negligently produced, designed, manufactured, advertised, distributed, sold and/or otherwise introduced into the stream of commerce the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, which by its defective and negligent construction was unreasonably dangerous under ordinary use;

   c. Negligently designed the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, in that the Defendants failed to adopt a safe, practical, feasible, or otherwise reasonable alternative design which could then have been reasonably adopted and which would have prevented or substantially reduced the risk of harm without substantially impairing the usefulness, practicality, or desirability of the portable oxygen unit;

d. Negligently designed the oxygen tank, the regulator, and/or the conserving regulator used by Decedent at the time of her death, in that at the time the oxygen tank, the regulator, and/or the conserving regulator left the control of the Defendants the design of the oxygen tank, the regulator, and/or the conserving regulator was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of such design;

e. Negligently inspected the oxygen tank, the regulator, and/or the conserving regulator used by Decedent at the time of her death, so that there was permitted to be introduced into the stream of commerce an oxygen concentrator which was unreasonably dangerous under ordinary use;

f. Failed to exercise due care in the manufacturing, design, and supply of the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, in that it was reasonably foreseeable that the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, would create a risk to human life;

g. Negligently advertised oxygen tanks, the regulators, and/or the conserving regulators the same or similar to the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, which is the subject of this lawsuit, as being safe under ordinary use and care; and

h. Failed to recall oxygen tanks, regulators, and/or conserving regulators, the same or similar to the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, which is the subject of this lawsuit when due care and concern for human life imposed a duty to recall such portable oxygen units.

35. As a direct and proximate result of the negligence of the Defendants, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## COUNT FOUR
## BREACH OF IMPLIED WARRANTY
### (Against Defendants LINCARE, INC., and LINCARE HOLDINGS, INC.)

36. The allegations set forth in paragraph 1-35 are re-alleged and incorporated herein by reference.

37. The Defendants impliedly warranted and represented that the previously described Oxygen Unit, including the Invacare Platinum 10 oxygen concentrator (SN14Cf002883), was of merchantable quality and was reasonably fit for the purpose for which it was intended.

38. The Decedent reasonably relied upon the Defendants implied warranty of merchantability.

39. The previously described Oxygen Unit, including the Invacare Platinum 10 oxygen concentrator (SN14Cf002883), was not of merchantable quality but, instead, was defective.

40. This defective condition constituted a breach of the implied warranty of merchantability. Further, the Defendants breached its implied warranty of merchantability by failure to provide timely delivery of a non-defective Oxygen Unit, including a non-defective oxygen concentrator.

41. As a direct and proximate result of Defendants' breach of implied warranty of merchantability, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs,

on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## COUNT FIVE
## BREACH OF IMPLIED WARRANTY
### (Against Defendants INVACARE CONTINUING CARE, INC, and INVACARE CORPORATION)

42. The allegations set forth in paragraph 1-41 are re-alleged and incorporated herein by reference.

43. The Defendants impliedly warranted and represented that the Invacare Platinum 10 oxygen concentrator (SN14Cf002883) was of merchantable quality and was reasonably fit for the purpose for which the oxygen concentrator was intended.

44. The Decedent reasonably relied upon the Defendants implied warranty of merchantability.

45. The Invacare Platinum 10 oxygen concentrator (SN14Cf002883) was not of merchantable quality but, instead, was defective.

46. This defective condition constituted a breach of the implied warranty of merchantability. Further, the Defendants breached its implied warranty of merchantability by failure to provide proper and adequate warnings.

47. As a direct and proximate result of Defendants' breach of implied warranty of merchantability, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the

Page 13 of 16

common law of the State of North Carolina.

## COUNT SIX
## BREACH OF IMPLIED WARRANTY
(Against Defendants JOHN DOES 1-3)

48. The allegations set forth in paragraph 1-47 are re-alleged and incorporated herein by reference.

49. The Defendants impliedly warranted and represented that the oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, was of merchantable quality and was reasonably fit for the purpose for which they were intended.

50. The Decedent reasonably relied upon the Defendants implied warranty of merchantability.

51. The oxygen tank, the regulator, and/or the conserving regulator, used by Decedent at the time of her death, were not of merchantable quality but, instead, were defective.

52. This defective condition constituted a breach of the implied warranty of merchantability. Further, the Defendants breached its implied warranty of merchantability by failure to provide proper and adequate warnings.

53. As a direct and proximate result of Defendants' breach of implied warranty of merchantability, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## COUNT SEVEN
## BREACH OF EXPRESSED WARRANTY
### (Against Defendants LINCARE, INC., and LINCARE HOLDINGS, INC.)

54. The allegations set forth in paragraph 1- 53 are re-alleged and incorporated herein by reference.

55. Defendants' advertisements and promotional statements alleged above contained broad claims amounting to a warranty that Defendants' products were not harmful and that Defendants' services were prompt.

56. As alleged above, Defendants breached their warranties by offering for sale or lease, and selling or leasing as non-harmful, Defendants' products; including the Invacare Platinum 10 oxygen concentrator (SN14Cf002883), which were in fact harmful.

57. As a direct and proximate result of Defendants' breach of expressed warranty of merchantability, the Decedent suffered mental anguish, painful injuries, and death; and the Plaintiffs, on behalf of the Decedent's estate and survivors have suffered damages in excess of the jurisdictional limits of this court. The Defendants, therefore, are liable to the Plaintiffs for all general, special, and equitable relief to which the Plaintiffs are entitled by the provisions of NCGS 28A-18 and the common law of the State of North Carolina.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for the following relief:

a. A trial by jury as to each and every triable issue;

b. A judgment entered against each of the Defendants, jointly and severally, in an amount in excess of $25,000.00;

c. An award of all damages allowed by the provisions of NCGS 28A-18, NCGS 99B, and the common laws of the State of North Carolina for the wrongful death of Stephanie Perkins;

d. All costs of this action be cast against the Defendants;

e. An award of reasonable attorneys' fees and expenses; and

f. Any and all further relief as the Court deems just and appropriate.

Respectfully submitted this 14th day of March, 2017.

                                                Angela N. Gray
                                      North Carolina Bar No. 21006
                                      GRAY NEWELL THOMAS, LLP
                                      7 Corporate Center Court, Suite B
                                            Greensboro, NC 27408
                                              (336) 724-0330 Office
                                                 (336) 458-9359 Fax
                                           angela@graynewell.com